UNITED STATES of America,
Plaintiff–Appellee,

v.

Alejandro MATUS–LEVA,
Defendant Appellant.

No. 01–50093.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 2002.

Filed Dec. 6, 2002.

Todd W. Burns, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant Alejandro Matus–Leva.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when opinion was filed), David P. Curnow, Assistant United States Attorney, U.S. Attorney's Office, San Diego, CA, for plaintiff-appellee United States of America.

Before: KOZINSKI and GOULD, Circuit Judges, and CEBULL,* District Judge.

* The Honorable Richard F. Cebull, United States District Judge for the District of Montana, sitting by designation.

## OPINION

GOULD, Circuit Judge:

Matus–Leva entered a conditional plea of guilty for two counts of bringing in illegal aliens resulting in death, 8 U.S.C. §§ 1324(a)(1)(A)(i) and (a)(1)(B)(iv), and one count of bringing in illegal aliens for financial gain, 8 U.S.C. § 1324(a)(2)(B)(ii). He was sentenced to sixty-three months imprisonment. He argues that the district court erred in failing to suppress his incriminating statements; that the alien smuggling statute, 8 U.S.C. § 1324, violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); that the district court erred in not requiring the government to establish mens rea to support the "resulting in . . . death" factor of 8 U.S.C. § 1324(a)(1)(B)(iv), and, alternatively, that the "resulting in . . . death" requirement is void for vagueness; that the district court erred in refusing to bifurcate the trial to separate the "resulting in . . . death" evidence from the remainder of the case. Finally, Matus–Leva alleges several sentencing errors under the Federal Sentencing Guidelines. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court in all respects.

### I

On March 4, 2000, eleven individuals, including Matus–Leva, crossed the United States border from Tecate, Mexico. For the next day and a half, they were caught in a snowstorm as they traveled through the mountains. Two members of the group, Jorge Lemus Contreras and Margarita Jarquin Perez, fell ill on March 5, and three others stayed behind with them while the rest of the group continued to look for help. During the night of March 5, Lemus Contreras and Jarquin–Perez both died of hypothermia.

Early the next morning, the brothers of Jarquin Perez came upon a highway and asked a driver for help. The nine survivors were rescued and taken into custody on March 6. Matus–Leva was advised of his *Miranda* rights in Spanish in the presence of a representative of the Mexican Consulate. Matus–Leva waived his right to counsel and was interviewed. On March 7, he was again advised of his *Miranda* rights. After waiving his right to counsel, he made a sworn statement on videotape, admitting that he was the guide on the trip and that he was to be paid $400.

Matus–Leva was indicted on March 17, 2000, for twenty-nine counts of violating 8 U.S.C. § 1324, which applies to offenses that involve bringing in and harboring certain aliens. On May 5, 2000, the government filed a superseding indictment, which added the element of specific intent. Matus–Leva brought several motions *in limine*, including a motion to dismiss the indictment based on 1) an alleged Speedy Trial Act violation, 2) unreasonable delay in making a probable cause determination, and 3) the unconstitutional vagueness of § 1324. Matus–Leva also moved to suppress his post-*Miranda* statements as involuntary and because of pre-arraignment delay, and he moved to sever the counts or to bifurcate the trial. The trial court denied all of his motions. Matus–Leva then entered a conditional plea of guilty to three counts of violating § 1324, two based on §§ 1324(a)(1)(A)(i) and (a)(1)(B)(iv) (resulting in death), and one based on § 1324(a) (2)(B)(ii) (financial gain). Pursuant to the plea agreement, Matus–Leva waived his right to appeal or collaterally attack his conviction except as to the nature of the elements of the crime and the district court's adverse pretrial rulings. An addendum to the plea agreement enumerated the specific rulings and issues that Matus–Leva had the right to appeal. This appeal followed.

## II

Matus–Leva argues that his incriminating statements should have been suppressed because of pre-arraignment delay. We review the district court's ruling for clear error. *United States v. Padilla–Mendoza,* 157 F.3d 730, 732 (9th Cir.1998). In the circumstances of this case, which included providing him medical treatment, the delay was neither unreasonable nor contrary to public policy. *See, e.g., United States v. Van Poyck,* 77 F.3d 285, 288–89 (9th Cir.1996). Accordingly, the district court did not err in declining to suppress the statements on the basis of pre-arraignment delay.

Similarly, on de novo review, we reject Matus–Leva's contention that the district court erred in denying his motion to dismiss the indictment based on the delay between the time Matus–Leva was arrested and when he was granted a probable cause determination. Here, for much of the period at issue, the government was engaged in rescuing and providing medical treatment to aliens whom Matus–Leva had been guiding through the mountains and to other groups of aliens who were caught in the same snowstorm. Any resulting delay was reasonable. *See County of Riverside v. McLaughlin,* 500 U.S. 44, 56–57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

On de novo review, we also reject Matus–Leva's contention that the trial court erred in denying his request to suppress his statements because they were involuntary. A Border Patrol Agent testified that Matus–Leva's rights and the consequences of their waiver were slowly and carefully explained to him in Spanish. The totality of the circumstances does not suggest that the government obtained the statements by physical or psychological coercion or other improper inducement. *United States v. Harrison,* 34 F.3d 886, 890 (9th Cir.1994).

## III

Matus–Leva argues that § 1324 contravenes the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the statute sets out the substantive crime separately from the possible penalties and permits increased penalties in certain circumstances. This argument is wholly without merit. This case does not come within the literal terms or the reasoning of *Apprendi,* because this case does not involve sentencing factors to be decided by a judge that increase the penalty beyond the statutory maximum. 530 U.S. at 490, 120 S.Ct. 2348. Even if this case did involve such sentencing factors, there can be no *Apprendi* error here because defendant was charged in the indictment with alien smuggling resulting in death, and he pled guilty. No genuine issue is presented under *Apprendi* or its progeny.

## IV

Matus–Leva contends that the district court erred in refusing to sever the counts or, in the alternative, to bifurcate evidence relevant to his alleged violations of 8 U.S.C. § 1324(a)(1)(B)(iv), *i.e.,* evidence relating to the death of the aliens he was guiding. We reject this contention because the district court has wide discretion in ruling on a severance or bifurcation motion, *see United States v. O'Neal,* 834 F.2d 862, 866 (9th Cir.1987), and no showing is made that the court abused that discretion. Bifurcation of proceeding relating to death of the aliens he guided would have been judicially inefficient and was not necessary to give Matus–Leva a fair trial. There was no abuse of discretion.

## V

Matus–Leva contends that the district court erred in applying the federal

sentencing guidelines. We review the court's legal interpretations of the guidelines de novo, *United States v. Montano*, 250 F.3d 709, 712 (9th Cir.2001), and the factual underpinnings of the court's rulings for clear error, *United States v. Rodriguez–Cruz*, 255 F.3d 1054, 1058 (9th Cir. 2001). We conclude that no error occurred.

■ The court properly relied on section 2L1.1(b)(6)(4) of the federal sentencing guidelines in imposing an eight-level upward adjustment because persons died in the course of the offense. U.S.S.G. § 2L1.1(b)(6)(4); *see also Rodriguez–Cruz*, 255 F.3d at 1059. Similarly, on the record before us, the court was not required to grant Matus–Leva a downward adjustment under section 3B1.2(b) of the federal sentencing guidelines because of his allegedly minor role. U.S.S.G. § 3B1.2(b); *see also Rodriguez–Cruz*, 255 F.3d at 1059–60. The government presented evidence that Matus–Leva was a guide, and, as a guide, his role was not a minor one regardless of his compensation level.

Finally, we also reject Matus–Leva's contention that the district court was entitled to depart downward to counteract the fact that his sentence was based on an allegedly invalid prior conviction. The district court below in this case properly concluded that it was bound by the prior decision of the other district court that rejected Matus–Leva's petition for writ of coram nobis.[1] *See, e.g., Daniels v. United States*, 532 U.S. 374, 382, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001).

## VI

Section 1324 proscribes alien smuggling and provides for increased penalties when the smuggling "result[s] in the death of any person."[2] 8 U.S.C. § 1324(a)(1)(B)(iv). The Supreme Court has held "that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or is so indefinite that it encourages arbitrary and erratic arrests and convictions, is void for vagueness." *Colautti v. Franklin*, 439 U.S. 379, 390, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (internal quotation marks and citations omitted). Matus–Leva argues that the "resulting in ... death" provision has no explicit *mens rea* requirement, and so it is void for vagueness because it could be applied to a defendant even if the death had nothing to do with the smuggling. That argument lacks merit.[3]

As demonstrated by our analysis in *United States v. Nguyen*, 73 F.3d 887, 894 (9th Cir.1995), section 1324 *does* have a

---

**1.** We affirmed the district court's denial of the *coram nobis* petition. *Matus–Leva v. United States*, 287 F.3d 758 (9th Cir.2002). However, as the district court here suggested, if Matus–Leva is ultimately successful in attacking the validity of the conviction, he can then bring a motion in the district court to reopen the sentencing judgment in this case.

**2.** Section 1324(a)(1) provides, in relevant part:

    (A) Any person who—
      (i) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner ...;....
    (B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—
      ....
      (iv) in the case of a violation of subparagraph (A)(i), (ii), (iii), (iv), or (v) resulting in the death of any person, be punished by death or imprisoned for any term of years or for life, fined under Title 18, or both.

8 U.S.C. § 1324(a)(1).

**3.** We reject without discussion Matus–Leva's disproportionality challenge to the statute because it was not preserved below.

*mens rea* requirement, namely that the alleged smuggler intend to violate the immigration laws. Matus–Leva relies on the Model Penal Code for the proposition that a statute's *mens rea* requirement should be applied to all material elements of the statute, but the Model Penal Code provides only persuasive authority, which can never override the plain meaning of a federal statute. Moreover, no Ninth Circuit precedent adopts that general guideline, and neither the Supreme Court nor the Ninth Circuit has held that that advisory principle is constitutionally mandated.[4]

■ [2] Instead of the secondary authority proffered by Matus–Leva, we rely on our precedent:

> We start from the basic premise that the definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute. Thus, in determining what mental state is required to prove a violation of [subsection (a)(1)(B)(iv) ], the focus of our inquiry is the intent of Congress.

*Id.* at 890 (internal quotation marks and citations omitted). Moreover, "in determining the intent of Congress, we look first to the language of the statute." *Id.* Here, the subsection at issue lacks a *mens rea* requirement, whereas accompanying subsections have *mens rea* requirements. *Compare* 8 U.S.C. § 1324(a)(1)(B)(iv) *with* 8 U.S.C. § 1324(a)(1)(B)(i). In such circumstances, it is proper to conclude that subsection (a)(1)(B)(iv) lacks a separate *mens rea* requirement. *See, e.g., Rodriguez–Cruz*, 255 F.3d at 1059. Therefore, the only mental state required under sub-

section (a)(1)(B)(iv) is an intent to violate the immigration laws and knowledge that the individuals being smuggled are illegal aliens. *See Nguyen*, 73 F.3d at 894.

■ The absence of a separate *mens rea* requirement in sub-section (a)(1)(B)(iv) does not render it void for vagueness. First, the use of the word "resulting" means that there is an increased penalty only if a death occurred in the course of smuggling and was related to the smuggling. The term "resulting" incorporates a causation requirement and thus puts persons of ordinary intelligence on notice that increased penalties may apply if they allow those they are smuggling to be exposed to life-threatening conditions during the smuggling process. Second, there is no danger that this subsection will chill constitutionally protected conduct, *cf. Franklin*, 439 U.S. at 396, 99 S.Ct. 675, or that it will be used to subject persons engaging in wholly innocent conduct to criminal liability, *cf. Nguyen*, 73 F.3d at 893. Subsection (a)(1)(B)(iv) only provides increased penalties to those who have criminally smuggled aliens in violation of the immigration laws. It thus reaches no constitutionally-protected or innocent conduct. We reject Matus–Leva's vagueness challenge and affirm the district court in all respects.

**AFFIRMED.**

---

4. Matus–Leva cites *United States v. Sua*, —— F.3d ——, —— (9thCir.2002) for the principle that "[t]raditionally, the *mens rea* of a crime extends to each element of that crime." However, *Sua* then pointed to Ninth Circuit authority for refusing to require such an ex-

tension of the *mens rea* for the crime at issue there. *See id. Sua* can hardly require us to extend the *mens rea* here, when our precedential ruling on § 1324 has similarly refused to require such an extension.