# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

CARLOS ZARATE LIERA,
          *Defendant-Appellant.*

No. 07-50546

D.C. No.
CR-07-00488-
LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued December 10, 2008
Submitted May 5, 2009
Pasadena, California

Filed November 4, 2009

Before: Harry Pregerson, Dorothy W. Nelson and
David R. Thompson, Circuit Judges.

Opinion by Judge Pregerson

14841

## COUNSEL

Steven F. Hubacheck, Federal Defenders of San Diego, San Diego, California, for the defendant-appellant (argued and on the briefs).

Mark R. Rehe, Assistant United States Attorney (argued and on the briefs), Bruce R. Castetter, Assistant United States Attorney, and Karen P. Hewitt, United States Attorney (on the briefs), San Diego, California, for the plaintiff-appellee.

## OPINION

PREGERSON, Circuit Judge:

Carlos Zarate Liera ("Liera") was convicted of two counts of bringing aliens into the United States for financial gain and aiding and abetting, in violation of 8 U.S.C.

§ 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. Liera was also con-victed of two counts of bringing aliens into the United States without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). On appeal, Liera's primary argument is that the district court erred by not suppressing incriminating statements Liera made to law enforcement officers during the time they unreasonably and unnecessarily delayed presenting him before a magistrate judge for arraignment.[1] We have jurisdiction under 28 U.S.C. § 1291. We agree and vacate Liera's convictions and remand for a new trial.

## I.  Facts

On February 15, 2007, at about 4:15 a.m., Liera entered the United States from Mexico at the Calexico West Port of Entry. Liera was driving a 1989 Chevrolet pickup truck with Mexican license plates. During a border search of the truck, Customs and Border Protection ("CBP") officers found two unrelated aliens, Le Chen and Wu Chen, under the truck's hood lying in separate built-in compartments located on each side of the engine.[2] CBP officers also found a cell phone. It is unclear whether the cell phone was found in the truck or whether the cell phone was found in one of Liera's pockets during a pat-down search.

Following Liera's arrest, CBP Officer Figueroa interro-gated Liera on two separate occasions.[3] At 9:18 a.m., about

---

[1]Liera also argues that: (1) the district court improperly admitted into evidence Le Chen's hearsay testimony regarding what his mother told him it would cost to have a person smuggled into the United States; (2) the dis-trict court should have suppressed all of Liera's statements to CBP Officer Figueroa because of non-compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966); and (3) the district court's jury instructions denied Liera his right to a jury finding on the "specific intent" element of the aiding and abetting charge.

[2]Le Chen and Wu Chen are citizens of the People's Republic of China. At the time of their arrest, neither Le Chen or Wu Chen had applied for or been granted permission to be present or reside in the United States.

[3]The record reflects that Liera was advised of and waived his *Miranda* rights during both interrogations.

five hours after Liera's arrest, Officer Figueroa interrogated Liera for the first time. During this first interrogation, Liera denied knowing that Le Chen and Wu Chen were under the truck's hood. Liera told Officer Figueroa that the truck belonged to his uncle's neighbor, Raul Gonzales, and that he borrowed the truck because his truck had two flat tires and he needed to get to work. Liera also told Officer Figueroa that he was an agricultural field worker in Calipatria, California, and was on his way to work.

At 10:45 a.m., Officer Figueroa interrogated material witnesses Le Chen and Wu Chen. Neither identified Liera as part of a scheme to bring Le Chen, Wu Chen, or any other aliens into the United States.

At 1:30 p.m., Officer Figueroa discovered that the video recording equipment used in the first set of interrogations malfunctioned. Liera, Le Chen, and Wu Chen's interrogations were recorded without sound because of a battery problem. Officer Figueroa then contacted the United States Attorney's Office. An Assistant United States Attorney gave Officer Figueroa the "green light" to interrogate Liera, Le Chen, and Wu Chen a second time.

At 2:57 p.m., more than ten hours after Liera's arrest, Officer Figueroa interrogated Liera for a second time. During the second interrogation, Officer Figueroa asked Liera questions regarding the cell phone found during Liera's arrest. These questions were not asked during the first interrogation. In particular, Officer Figueroa asked Liera if the phone was his and if he was able to access the phone's electronic information using an access code. Liera answered "yes," and entered the phone's access code. Officer Figueroa reviewed the log of received, missed, and outgoing calls and learned that Liera's phone had received three calls from a phone number stored in the phone's internal memory under the name "Pollos." In Spanish slang, "Pollos" (or "chickens") refers to people who are illegally smuggled into the United States. During the inter-

rogation, Liera confirmed that the three calls occurred on February 14 and 15, 2007. Liera also acknowledged that one meaning for "Pollos" was "smuggled aliens." Liera, however, claimed that the "Pollos" entry in his cell phone referred to a friend of his who sold chickens. In closing argument, the government referred to the "Pollos" entry in Liera's cell phone as a "smoking gun."

The chambers of Magistrate Judge Peter Lewis are located at the United States Courthouse in El Centro, California, about fifteen miles from the Calexico West Port of Entry where Liera was arrested. Because Officer Figueroa interrogated Liera for a second time, Liera was not arraigned during Magistrate Judge Peter Lewis's 3:00 p.m. calendar call. Instead, Liera was arraigned at 10:48 a.m. on February 16, 2007, more than thirty hours after his arrest.[4]

---

[4]The following chart reflects the relevant dates and times:

| Date | Time | Time Since Arrest | Event |
|---|---|---|---|
| 2-15-07 | 4:15 a.m. | 0 hrs | Customs and Border Protection Officers arrest Liera. |
| 2-15-07 | 9:18 a.m. | 5 hrs 3 min | Officer Figueroa interrogates Liera for a first time. |
| 2-15-07 | 10:45 a.m. | 6.5 hrs | Officer Figueroa interrogates Le Chen and Wu Chen. |
| 2-15-07 | 1:30 p.m. | 9 hrs 15 min | Officer Figueroa discovers the video equipment malfunctioned and did not record audio. |
| 2-15-07 | 2:57 p.m. | 10 hrs 42 min | Officer Figueroa interrogates Liera for a second time. |
| 2-15-07 | 3:00 p.m. | 10 hrs 45 min | Magistrate Judge Lewis conducts an arraignment calendar at the El Centro United States Courthouse. Liera is not arraigned during the 3:00 p.m. calendar. |
| 2-16-07 | 10:48 a.m. | 30 hrs 33 min | Liera is arraigned. |

Before trial, Liera moved to suppress the statements he made during the second interrogation. The district court denied his motion. In particular, the district court noted that "the delay that led up to the second interrogation . . . was justified by the need to get recorded statements from both [Liera] and the material witnesses" and that the delay was "necessary given the failure of the [recording] equipment."

After a two-day jury trial, Liera was convicted of two counts of bringing aliens into the United States for financial gain and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. Liera was also convicted of two counts of bringing aliens into the United States without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). The district court sentenced Liera to thirty-six months concurrent imprisonment for each of the two financial gain and aiding and abetting counts, and twenty-seven months concurrent imprisonment for each of the two failure to present counts. All four sentences were to run concurrently.

This timely appeal followed.

## II.   THE DISTRICT COURT'S FAILURE TO SUPPRESS LIERA'S INCRIMINATING STATEMENTS MADE DURING HIS SECOND INTERROGATION

The primary issue here is whether the district court erred by not suppressing the incriminating statements Liera made to law enforcement officers during his second interrogation. Liera argues that any evidence obtained during his second interrogation must be suppressed because of an unnecessary or unreasonable delay under Federal Rule of Criminal Procedure 5(a), 18 U.S.C. § 3501(c), and the *McNabb-Mallory* Rule. We agree.

### A.  *The* McNabb-Mallory *Rule, Federal Rule of Criminal Procedure 5(a), and 18 U.S.C. § 3501(c)*

We first provide background information regarding the *McNabb-Mallory* Rule, Federal Rule of Criminal Procedure 5(a), and 18 U.S.C. § 3501(c).

**[1]** *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957) "generally rende[r] inadmissible confessions made during periods of detention that violat[e] the prompt presentment requirement of [Federal Rule of Criminal Procedure] 5(a)" (the "*McNabb-Mallory* Rule"). *Corley v. United States*, ___ U.S. ___, 129 S. Ct. 1558, 1563 (2009) (quoting *United States v. Alvarez-Sanchez*, 511 U.S. 350, 354 (1994) (alteration in original). Federal Rule of Criminal Procedure 5(a) states that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a).

**[2]** In response to the Supreme Court's rulings in *McNabb* and *Mallory*, Congress enacted 18 U.S.C. § 3501(c). Section 3501(c) states that "a confession made . . . by . . . a defendant . . . , while . . . under arrest . . . , shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and . . . within six hours [of arrest]." 18 U.S.C. § 3501(c). Section 3501(c) also provides that the six-hour "time limitation . . . shall not apply in any case in which the delay in bringing [the defendant] before [a] magistrate judge . . . beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge." 18 U.S.C. § 3501(c).

**[3]** On April 6, 2009, the Supreme Court reaffirmed the applicability of the *McNabb-Mallory* Rule in *Corley v. United States*. 129 S. Ct. at 1563. The Supreme Court held that if a

"confession occur[s] before presentment and beyond six hours . . . the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed." *Id.* "[E]ven voluntary confessions are inadmissible if given after an unreasonable delay in presentment" exceeding six hours. *Id.* at 1563 (citing *Upshaw v. United States*, 335 U.S. 410 (1948)).[5]

Here, it is undisputed that Liera's second interrogation "occurred before presentment and beyond six hours." *Id.* It is also undisputed that the delay was not a result of the distance needed to travel to the nearest magistrate, since the nearest available magistrate, Magistrate Judge Lewis, was located only fifteen miles away.

Accordingly, our analysis in this case turns on whether delaying Liera's arraignment to conduct a second interrogation "was unreasonable or unnecessary under the *McNabb-Mallory* cases." *Id.*

### B.    Unreasonable or Unnecessary Delay

[4] "We review a district court's finding that a pre-arraignment delay was reasonable for clear error." *See United States v. Padilla-Mendoza,* 157 F.3d 730, 732 (9th Cir. 1998). Although in *Corley* the Supreme Court specifically declined to address what constitutes an "unreasonable or unnecessary delay," the court noted that "delay for the purpose of interrogation is the epitome of 'unnecessary delay.' " *Corley*, 129 S. Ct. at 1563 (quoting *Mallory*, 354 U.S. at 455-56).

[5] We recently addressed what constitutes an "unreasonable or unnecessary delay" in *United States v. Garcia-*

---

[5]Under § 3501(e) a confession is defined as "any confession of guilt or *any self incriminating statement* made or given orally or in writing." 18 U.S.C. § 3501(e) (emphasis added).

*Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009). In *Garcia-Hernandez*, we stated that "administrative delays due to the unavailability of government personnel and judges necessary to completing the arraignment process are reasonable and necessary." *Id.* Accordingly, we held that the nineteen hour delay in presenting Garcia-Hernandez to a magistrate did not violate the prompt presentment requirement of Rule 5(a) because the delay "was caused not by a desire to interrogate Garcia further but by *a shortage of personnel necessary to process Garcia and determine whether he should be criminally charged.*" *Id.* at 1106 (emphasis added); *see also United States v. Matus-Leva*, 311 F.3d 1214, 1217 (9th Cir. 2002) (holding that a twenty-four hour pre-arraignment delay was reasonable and necessary because the defendant needed to receive medical treatment); *United States v. Gamez*, 301 F.3d 1138, 1141-43 (9th Cir. 2002) (holding that a thirty-one hour pre-arraignment delay was necessary because the defendant spoke only Spanish, and the "first available Spanish-speaking FBI agent did not arrive until approximately 27 hours after defendant's arrest").

Here, however, unlike in *Garcia-Hernandez*, the delay in presenting Liera to a magistrate judge was not necessary to redress a "shortage of personnel necessary to process [Liera] and determine whether he should be criminally charged." *Garcia-Hernandez*, 569 F.3d at 1106. At about 4:15 a.m., Customs and Border Protection Officers arrested Liera. At 9:18 a.m., over five hours after Liera's arrest, Officer Figueroa interrogated Liera for the first time. At 10:45 a.m., Officer Figueroa interrogated the two material witnesses, Le Chen and Wu Chen. After interrogating Liera and both material witnesses the first time, the government had more than enough information to determine whether Liera should be criminally charged, and was not prevented by personnel shortages from processing Liera appropriately.[6]

_____

[6]We note, however, that a delay in presenting a defendant to a magistrate judge may be independently unreasonable regardless whether addi-

The government could have arraigned Liera during Magistrate Judge Lewis's 3:00 p.m. arraignment calendar at the El Centro United States Courthouse, if not earlier. At 1:30 p.m., Officer Figueroa discovered that the video recording equipment used during Liera's first interrogation malfunctioned and did not record any audio. Rather than proceed with the arraignment at 3:00 p.m., the government conducted a second interrogation at 2:57 p.m., nearly eleven hours after Liera's arrest. As a result, Liera was not arraigned until 10:48 a.m. the next day, over thirty hours after his arrest.

[6] The purpose of the *McNabb-Mallory* Rule is not merely to "avoid all the evil implications of secret interrogation of persons accused of crime." *McNabb v. United States*, 318 U.S. 332, 344 (1943). Rather, the *McNabb-Mallory* Rule was also designed to insure that a defendant is brought "before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined." *Mallory v. United States*, 354 U.S. 449, 454 (1957). Under Federal Rule of Criminal Procedure 5(a) the government was required to present Liera to a magistrate as quickly possible so that Liera could be advised of his rights by a judicial officer. Instead of presenting Liera to a magistrate as quickly as possible, the government delayed Liera's arraignment so that it could interrogate Liera a second time and obtain an audio recording of his statements. An audio recording of Liera's statements was, however, unnecessary to complete the arraignment process or determine whether to file criminal charges against Liera.[7]

---

tional information is necessary for the government to determine whether to file criminal charges. *See, e.g.*, *United States v. Alvarez-Sanchez*, 975 F.2d 1396 (9th Cir. 1992), *rev'd on other grounds*, 511 U.S. 350 (1994) (holding that delaying a defendant's arraignment "specifically to provide federal officers with time to interrogate him . . . . is one of the most patent violations of Rule 5(a) and suppression is required on the basis of that delay alone").

[7]Although we do not believe that the video recorder malfunction justified delaying Liera's arraignment to conduct a second (recorded) interrogation, we commend the government's general practice of recording interrogations.

**[7]** Accordingly, we hold that the district court clearly erred by refusing to suppress statements Liera made during his second interrogation.**⁸**

## III.   HARMLESS Error

The government argues that even if the district court erred in refusing to suppress the statements and evidence obtained during Liera's second interrogation, the error was harmless. This argument fails.

**[8]** An error is harmless if "it is more probable than not that the error did not materially affect the verdict." *See United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002), *cert. denied*, 538 U.S. 953 (2003); *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc). The government bears the burden of persuasion and " 'we *must* reverse . . . unless it is more probable than not' that the error was harmless." *Seschillie*, 310 F.3d at 1215 (emphasis in original) (quoting *Morales*, 108 F.3d at 1040). "[I]n cases of 'equipoise,' we reverse." *Id.* (quoting *United States v. Mitchell*, 172 F.3d 1104, 1111 (9th Cir. 1999)).

Here, the government, at trial, repeatedly relied upon the information gathered from the second interrogation. In particular, the government relied heavily on the data in the cell phone and Liera's statements regarding the "Pollos" cell phone entry. The government also referred to the "Pollos" cell-phone entry as the "smoking gun" during closing argument. Indeed, the government's reference to the information as a "smoking gun" strongly suggests that the improperly admitted evidence was significant.

---

**⁸**There is, however, insufficient evidence in the record to determine whether, absent Liera's statements, it was proper to admit into evidence the data entries contained in the cell phone. On remand, the district court should address this issue.

Moreover, absent the cell phone entries and testimony regarding "Pollos," the evidence against Liera was not overwhelming.[9] There was no direct evidence to establish that Liera had knowledge that Le Chen and Wu Chen were in the engine compartment. Neither Le Chen nor Wu Chen identified Liera as a participant in the smuggling, and the government does not dispute that the pick-up truck did not belong to Liera, but instead belonged to his uncle's neighbor.

The fact that Liera was the sole occupant and driver of the pick-up truck is insufficient to establish harmless error. *See United States v. Foster*, 227 F.3d 1096, 1098-1101 (9th Cir. 2000) (stating that a less than compelling but plausible account was sufficient to defeat harmless error); *United States v. Velarde-Gomez*, 269 F.3d 1023, 1035 (2001) (en banc) (refusing to find harmless error in a sole occupant and driver case where the "theory of the defense, while not necessarily compelling, was equally plausible"). Here, Liera's claim that he did not know that Le Chen and Wu Chen were under the truck's hood, while perhaps not particularly compelling, was certainly plausible. This is sufficient to defeat the government's harmless error argument.[10]

---

[9]The government also contends that the error was harmless because Liera repeated the statements he now claims should be suppressed while testifying at trial. This argument is unpersuasive. Absent the evidence regarding "Pollos" obtained solely during the second interrogation, there is no guarantee that Liera would have testified.

[10]Additionally, the cases the government cites to support its harmless error argument are not persuasive because they apply a more stringent standard than the harmless error standard we must apply here. For example, the government relies heavily upon *United States v. Schemenauer*, 394 F.3d 746, 752 (9th Cir. 2005) which presented a factual scenario similar to Liera's case. In *Schemenauer*, we reviewed the sufficiency of the evidence for clear error. Under the clear error standard, the court must "view the evidence in the light most favorable to the government and ask whether it is quite clear that no reasonable juror could have found the elements of each charge beyond a reasonable doubt." *Id.* (citing *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002). Under a harmless error standard, in contrast, the government bears the burden of establishing that "it is more probable than not that the error did not materially affect the verdict." *Seschillie*, 310 F.3d at 1214. *Schemenauer*'s analysis is therefore inapplicable here.

**[9]** Because the government placed significant emphasis on the improperly admitted evidence, and because the evidence establishing Liera's knowledge was limited to the fact that he was the sole occupant and driver of the truck, we find that the government has failed to establish that "it is more probable than not that the error did not materially affect the verdict." *Seschillie*, 310 F.3d at 1215 (citations and quotations omitted). Accordingly, we hold that the error was not harmless.

## IV.  LIERA'S REMAINING ARGUMENTS

Liera also argues that: (1) the district court improperly admitted into evidence Le Chen's hearsay testimony regarding what his mother told him it would cost to have a person smuggled into the United States; (2) the district court should have suppressed all of Liera's statements to CBP Officer Figueroa because of non-compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966); and (3) the district court's jury instructions denied Liera his right to a jury finding on the "specific intent" element of the aiding and abetting charge. We reverse the district court's ruling on the admission of Le Chen's testimony regarding his mother's statements concerning the cost of smuggling a person into the United States, but affirm the district court's ruling on the *Miranda* waiver and jury instruction.

### A.  *Le Chen's Testimony Regarding What His Mother Told Him It Would Cost to Smuggle a Person into the United States*

During Liera's trial, Le Chen testified that while he was in China his mother told him what it would cost to have a person smuggled into the United States. The district court determined that Le Chen's mother (the "declarant") was a co-conspirator and that her statements to Le Chen were admissible as non-hearsay under Federal Rule of Evidence 801(d)(2)(E).[11] Liera

---

[11]Rule 801(d)(2)(E) provides that a statement is not hearsay if "the statement is offered against a party and is . . . a statement by a coconspira-

argues that there was insufficient evidence to establish that Le Chen's mother was involved in a conspiracy and that the testimony was therefore inadmissable. We agree.

**[10]** Before an alleged co-conspirator's statement can be admitted into evidence under Rule 801(d)(2)(E), the government must establish that the declarant (Le Chen's mother) knowingly participated in a conspiracy. *See United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994) ("[A]n accused's knowledge of and participation in an alleged conspiracy with the putative co-conspirator are preliminary facts that must be established, by a preponderance of the evidence, before the co-conspirator's out-of-court statements can be introduced into evidence."). To establish that the declarant knowingly participated in a conspiracy, "the government cannot rely solely on the [alleged] co-conspirator statements themselves." *Id.* (citing *United States v. Silverman,* 861 F.2d 571, 578 (9th Cir. 1988)).

**[11]** Here, the only evidence offered by the government to establish that Le Chen's mother was involved in a conspiracy are the hearsay statements the government sought to introduce regarding what Le Chen's mother told Le Chen. During Liera's trial, Le Chen testified that his mother told him that a "middleman" was going to help smuggle Le Chen into the United States. In particular, Le Chen's mother told Le Chen that they "would pay the same amount [their] neighbors paid before," and that Le Chen would work to pay back the money once he arrived in the United States. Under Federal Rule of Evidence 801(d)(2), these statements are insufficient to establish that Le Chen's mother was involved in a conspiracy.[12] *See*

---

tor of a party during the course and in furtherance of the conspiracy." Rule 801(d)(2)(E) further provides that "[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered."

[12]The government argues that there is sufficient independent evidence to establish that Le Chen's mother was a co-conspirator, because on one

*Castaneda*, 16 F.2d at 1507 ("[T]he government cannot rely solely on the [alleged] co-conspirator statements themselves.").

[12] Accordingly, we hold that the district court erred by admitting, under Rule 801(d)(2)(E), Le Chen's hearsay testimony regarding what his mother told him it would cost to smuggle Le Chen into the United States.

### B.  *Liera's* Miranda *Waiver*

[13] Liera also argues that the district court should have suppressed all of his post-arrest statements for non-compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966). A district court's finding that a *Miranda* waiver was knowing and intelligent is a factual finding and is reviewed for clear error. *Collazo v. Estelle*, 940 F.2d 411, 415-16 (9th Cir. 1991) (en banc). Here, the record demonstrates that Liera knowingly and voluntarily waived his *Miranda* rights. Liera testified that he waived his *Miranda* rights and Liera's counsel repeatedly stated that there had been a valid and knowing *Miranda* waiver. The district court therefore properly denied Liera's motion to suppress his post-arrest statements to the CBP officers.

### C.  *The District Court's Jury Instructions*

[14] Finally, Liera argues that the district court's jury instructions denied Liera his right to a jury finding on the "specific intent" element of the aiding and abetting charge. Because Liera did not raise an objection to the jury instruc-

occasion Le Chen saw his mother speaking to a man he thought was the "middleman." This argument fails. Le Chen testified that he never personally met or spoke to the "middleman" and that he was not present for the conversation between his mother and this man. Accordingly, it does not constitute sufficient independent evidence to establish that Le Chen's mother was involved in a conspiracy.

tions at trial, we review for plain error. *United States v. Armstrong*, 909 F.2d 1238, 1244 (9th Cir. 1990). Here, the district court's jury instructions on the aiding and abetting theory required the jury to find that: (1) someone committed the underlying offense; and (2) that Liera aided and abetted its commission. Under the plain error standard of review, this is all that is required. *Armstrong*, 909 F.2d at 1244.

## V.   CONCLUSION

**[15]** We hold that the district court erred by not suppressing statements Liera made during the second interrogation because law enforcement officers unnecessarily delayed presenting Liera to a magistrate for arraignment in violation of Rule 5(a), 18 U.S.C. § 3501(c), and the *McNabb-Mallory* Rule. The district court's admission of the statements Liera made during the second interrogation was not harmless. We also hold that the district court erred by admitting into evidence Le Chen's testimony regarding his mother's statements concerning the cost of smuggling a person into the United States. We affirm the district court's ruling on the *Miranda* waiver and the district court's jury instructions. Liera's convictions are vacated, and we remand for a new trial.

**VACATED** and **REMANDED.**