**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10044 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00454-JAM-4 |
| v. | |
| MANUEL HERRERA-OSORNIO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10174 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00454-JAM-7 |
| v. | |
| SIXTO PADILLA-GOMEZ, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted March 12, 2013
San Francisco, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: FISHER, CALLAHAN, and NGUYEN, Circuit Judges.

Defendants-Appellants Sixto Padilla-Gomez and Manuel Herrera-Osornio appeal their convictions for (1) conspiracy to distribute and possess with intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846; (2) knowingly and intentionally possessing with intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) knowingly possessing firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2. Herrera-Osornio also appeals his convictions for knowingly and intentionally distributing a smaller quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and manufacturing over 1,000 marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Herrera-Osornio also appeals his sentence. We have jurisdiction pursuant to 8 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.[1]

**1.** There is sufficient evidence to sustain the guilty verdicts for both defendants on all counts. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

---

[1] Because the parties are familiar with the facts and procedural history, we restate them here only as necessary to explain our decision.

could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

There is ample evidence that Padilla-Gomez and Herrera-Osornio were connected to the conspiracy to sell marijuana, and that they possessed marijuana with intent to sell, under either co-conspirator and/or aiding-and-abetting theories. Specifically, Padilla-Gomez was seen at three key points during the day of the September 4, 2008, transaction, and he acted in a manner consistent with counter-surveillance during the transaction. He lived in Taft, California, near where some of the marijuana would be coming from. A narcotics dog alerted to his truck, which smelled strongly of deodorizers and, according to one investigating agent, of marijuana. Herrera-Osornio also acted in a manner consistent with counter-surveillance during the September 4 transaction. Herrera-Osornio had been seen before at a prior marijuana sale, where again he acted in a manner consistent with being a lookout, at the marijuana grow site, and at co-conspirator Felix Garcia-Valdez's residence after leaving the grow site. Both defendants, moreover, were described as "[s]tartled," "furtive," "nervous" and "submissive" when they were arrested at the September 4 transaction. Such circumstantial evidence was sufficient for a rational trier of fact to find that the defendants were guilty of the charges against them. *See Jackson*, 443 U.S. at 319; *see also United States v.*

3

*Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009); *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001).[2]

The evidence with respect to the 18 U.S.C. § 924(c) firearm enhancement also was sufficient, given that the government needed to prove only that it was foreseeable that the defendants' co-conspirators would bring one or more guns to the September 4 transaction, not that the defendants knew the guns were there. *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1203 (9th Cir. 2000). One agent testified that the likelihood of guns being present during a drug deal increased with the size of the deal, a fact relevant to the 326-pound, $500,000 sale at issue here. Two guns were brought to the transaction; each was in the back seat of a different truck, where Herrera-Osornio and another co-conspirator were seated, and at least the gun in one truck was readily accessible, covered only by a t-shirt. Padilla-Gomez previously had been involved in a marijuana operation in which a gun was

---

[2] The cases the defendants cite involved much weaker evidence of a connection to the conspiracy. *See, e.g.*, *United States v. Lopez*, 625 F.2d 889, 896 (9th Cir. 1982) (no evidence that the defendant, who had never been seen before his arrest, participated in any negotiations concerning, or delivery of, heroin, or that heroin was ever discussed in his presence); *United States v. Penagos*, 823 F.2d 346, 349 (9th Cir. 1987) (police saw the defendant engage in alleged counter-surveillance activities only once, not during a drug sale or transfer, and without focusing on "any particular persons or activities" that a lookout would be interested in).

4

discovered.  The fact that the guns were unloaded was not dispositive, since they still could be used for intimidation.  *See United States v. Bailey*, 516 U.S. 137, 148-50 (1995), *superseded by statute as stated in Abbott v. United States*, 131 S. Ct. 18, 20 (2010).

**2.**     The district court did not abuse its discretion in denying Padilla-Gomez's motion to exclude the evidence that a narcotics detection dog alerted to Padilla-Gomez's truck following the September 4 transaction and bust.  First, the motion was untimely because the government produced enough information before trial to notify Padilla-Gomez that it might try to connect the dog sniff to his truck.  Second, contrary to Padilla-Gomez's argument, dog sniffs do not necessarily trigger the expert disclosure requirements of Federal Rule of Criminal Procedure 16 or  require the district court to conduct a reliability inquiry under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See Florida v. Harris*, -- U.S. -- , 133 S. Ct. 1050, 1057–58 (2013) (rejecting any requirement for a detailed checklist of proof of reliability or special procedures for dog sniffs in probable cause hearings); *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (discussing trial courts' general ability to assess the reliability of dog sniffs).  Third, the dog sniff evidence in this case was reliable, and Padilla-Gomez had ample opportunity to subject the dog's handler to voir dire and cross-examination.  *See Harris*, 133 S.

5

Ct. at 1057; *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 982 (9th Cir. 2002). Finally, any error in admitting the evidence concerning the dog sniff was harmless because it was cumulative of other evidence implicating Padilla-Gomez in the conspiracy. *United States v. Liera*, 585 F.3d 1237, 1244 (9th Cir. 2009).

**3.** The district court did not abuse its discretion in admitting evidence of Padilla-Gomez's prior conviction under Federal Rules of Evidence 404(b) and 403. Rule 404(b) prohibits admitting evidence of prior bad acts to prove criminal propensity, but allows admission to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, or lack of accident." Fed. R. Evid. R. 404(b)(1)–(2); *see also United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) (explaining that Rule 404(b) is a "rule of inclusion," *i.e.*, unless a prior bad act tends to prove *only* propensity, it is admissible).

Evidence concerning Padilla-Gomez's involvement in 2005 in a marijuana growing operation tended to prove his intent (to make money from the illegal drug trade) and his knowledge of marijuana operations, and to disprove his claim that he was merely present during the September 4 transaction by coincidence. Accordingly, the prior conduct tended to prove a material element of the charges, was sufficiently similar to the offense charged, was based on sufficient evidence,

6

and was not too remote in time. *United States v. Ramirez-Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004). The fact that a rifle was found at the prior marijuana operation "tend[ed] to make the existence of the defendant's knowledge"—that firearms are used to guard significant marijuana operations, and that a firearm might be brought to the September 4 transaction—"more probable than it would be without the evidence." *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) (quotation marks omitted). Finally, the district court's limiting instruction reduced any risk of undue prejudice under Rule 403.

**4.** The district court properly sentenced Herrera-Osornio. The district court calculated Herrera-Osornio's offense level based on his responsibility for roughly 4,200 marijuana plants and his supervisory role at the marijuana grow site, both of which the government had to prove by a preponderance of the evidence. *See* U.S.S.G. §§ 2D1.1(a), (c)(6), 3B1.1(b); *United States v. Maldonado*, 215 F.3d 1046, 1051 (9th Cir. 2000); *United States v. Harrison-Philpot*, 978 F.2d 1520, 1523 (9th Cir. 1992).

Here, sufficient evidence supported the district court's findings. The investigating agents counted over 2,200 plants in just portions of the grow site and estimated based on their experience that there were over 4,200 plants. This estimate was consistent with statements made by co-conspirator Felix Garcia-

Valdez and the agents' reports. Regarding Herrera-Osornio's supervisory role, his co-conspirators explained that he was primarily responsible for the grow site. These statements were verified by "extrinsic corroborating evidence," *United States v. Egge*, 223 F.3d 1128, 1132 (9th Cir. 2000), including Herrera-Osornio's earlier presence at the grow site and the arrest of two minors at the site following the September 4 transaction and bust. This was sufficient evidence that Herrera-Osornio had responsibility over the property or activities of the conspiracy, and/or control over others. *See* U.S.S.G. § 3B1.1(b) & App. Notes 2, 4; *United States v. Riley*, 335 F.3d 919, 929 (9th Cir. 2003).

Finally, the district court adequately considered the 18 U.S.C. § 3553(a) sentencing factors, including: the extent of Herrera-Osornio's involvement; his lack of control over the minors at the grow site; his refusal to accept responsibility; his lack of criminal history; the possibility of sentencing disparities vis-à-vis his co-defendants; and his family circumstances.

**AFFIRMED**.