# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.

JULIO ALFONSO VALENZUELA-
ESPINOZA,
  *Defendant-Appellant.*

No. 10-10060

D.C. No.
4:08-cr-00431-
CKJ-HCE-1

ORDER
AMENDING
OPINION AND
DENYING
REHEARING AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
October 11, 2011—San Francisco, California

Filed December 28, 2011
Amended October 4, 2012

Before: Betty B. Fletcher, Stephen Reinhardt, and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge B. Fletcher

**COUNSEL**

Francisco Leon, Tucson, Arizona, for appellant Julio Alfonso Valenzuela-Espinoza.

Dennis K. Burke, United States Attorney; Christina M. Cabanillas, appellate Chief; and Bruce M. Ferg, Assistant United States Attorney, Tucson, Arizona, for appellee United States of America.

**ORDER**

This court's opinion, filed December 28, 2011, is amended by striking the words *"United States v."* before *"Liera"* on page 21390 of the slip opinion, replacing "1237," with "at" in

the same line, and striking the words "(9th Cir. 2009)" in the following line. It is further amended by replacing the word "constitutional" with "longstanding" before the word "principle" on page 21392; by replacing the word "two" with "three" after the word "identified" on page 21392; and by striking "Here, the" on that page and inserting the following passage before the words "district court":

<Finally, delays necessary to determine "whether [a suspect] should be criminally charged" are also reasonable. *Garcia-Hernandez*, 569 F.3d at 1106; *see also Gamez*, 301 F.3d at 1143 (explaining that delay was reasonable where it "was impossible to determine with what kind of offense Gamez would be charged" prior to questioning by Spanish-speaking agents).

The delay in presenting Valenzuela-Espinoza does not fall into any of these categories and was not reasonable. First, there is no suggestion that the delay was for humanitarian reasons.

Second, there were plenty of law enforcement personnel available to complete Valenzuela-Espinoza's arraignment. The>

The opinion is further amended by striking the words "create a" on page 21393 and replacing them with "make the delay" and by striking the word "delay" in the same line, before the word "under."

Following the words "under *McNabb-Mallory*" on that page, but before section C., the opinion is amended by inserting the following passage:

<Third, the record demonstrates that it was not necessary to conduct any further investigation to determine whether Valenzuela-Espinoza could be criminally charged. In its petition for rehearing, the government asserts that Valenzuela-

Espinoza was arrested only for being in the United States illegally, and that until the search warrant was executed it could not be determined if he would be charged with a criminal drug offense or merely turned over to immigration authorities.

As a preliminary matter, the government did not raise this argument in its initial briefing before this court, and its "failure to brief the issue results in waiver." *United States v. Ewing*, 638 F.3d 1226, 1230 (9th Cir. 2011). But in any event, this argument is not supported by the record. The government consistently asserted in its pleadings before the district court that after Valenzuela-Espinoza exited the carport in "a cloud of marijuana smoke" and told the officers that there was more than ten pounds of marijuana inside the house, the government "had probable cause to detain the defendant for a criminal offense, possession of marijuana." The government maintained that when Agent Van Holsbeke smelled and saw the marijuana smoke, he not only had probable cause to believe that there was marijuana inside the house "but was witnessing a crime being committed in his presence." The district court accepted these arguments, expressly finding that "[a]lthough Defendant Valenzuela-Espinoza was initially arrested because of his presence in the United States illegally, probable cause also existed regarding his involvement in criminal activity." There is simply nothing in the record to support the claim that the officers needed to execute the search warrant to determine whether they could charge Valenzuela-Espinoza with possession of marijuana.>

The opinion is also amended by striking section III.C. in its entirety. Finally, the first sentence in section IV., on page 21395, is struck as well. That section now begins with the words "Rule 5(a)."

With the opinion as amended, the Appellee's petition for panel rehearing and petition for rehearing en banc, filed April 10, 2012, is denied. The full court has been advised of the petition for rehearing and rehearing en banc and no judge has

requested a vote on whether to rehear the matter en banc. *See* Fed R. App. P. 35. No subsequent petitions for rehearing, rehearing en banc, or rehearing before the full court may be filed.

## OPINION

B. FLETCHER, Circuit Judge:

Julio Alfonso Valenzuela-Espinoza appeals his conviction for possession of marijuana with intent to distribute and conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846. Because the delay in presenting Valenzuela-Espinoza to a magistrate was unreasonable, his statements made more than six hours after his arrest must be suppressed under the rule announced in both *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957). We therefore REVERSE the district court's denial of Valenzuela-Espinoza's suppression motion, VACATE the conviction, and REMAND for further proceedings. Because his conviction must be vacated due to the *McNabb-Mallory* violation, we do not address Valenzuela-Espinoza's other challenges to his conviction raised on appeal.

## I.

Valenzuela-Espinoza was arrested on March 5, 2008, at a house in Tucson, Arizona. On March 3, Immigration and Customs Enforcement (ICE) Agent Leon Van Holsbeke received a tip from a confidential informant of "suspicious activity" taking place at the house. After intermittently observing the house on March 4 and the morning of March 5, Agent Van Holsbeke decided to conduct what he described as a "knock and talk." Agent Van Holsbeke, along with two other officers and a narcotics detection dog, approached the front door while

two officers positioned themselves around the back perimeter of the property. Four additional officers waited down the street.

Before Agent Van Holsbeke reached the front door, however, he heard someone shouting, "Stop, police, stop," and he ran to the side of the residence to investigate. The two officers positioned behind the house had stopped two men attempting to leave the house through the back door. The officers told Agent Van Holsbeke that another man — who turned out to be the defendant, Valenzuela-Espinoza — had tried to run from the residence, but had run back inside when the police shouted.

Agent Van Holsbeke returned to the front of the residence and began walking toward the carport when he smelled burning marijuana. He approached a storage room at the back of the carport, knocked, and announced himself as police. Valenzuela-Espinoza opened the door and complied with Agent Van Holsbeke's direction to step out of the room. Agent Van Holsbeke asked him if he lived at the residence; if he was a U.S. citizen (because Valenzuela-Espinoza apparently spoke no English); and if he was in the United States illegally. Valenzuela-Espinoza admitted that he was a Mexican national in the United States illegally. He was then arrested, at approximately 11:15 a.m. Despite failing to administer *Miranda* warnings, one of the other officers proceeded to ask him if there was contraband, weapons, or anyone else in the residence. Valenzuela-Espinoza said that there was "a lot" of marijuana in the residence, nodding affirmatively when asked if it was more than ten pounds.[1]

Agent Van Holsbeke then sought a search warrant, which was issued at 3:25 p.m. While Agent Van Holsbeke got the warrant, the other eight officers "sat on the house" to "make

---

[1]The government later conceded that this statement was taken in violation of *Miranda* and did not introduce it at trial.

sure no one else would come or go." The officers executed the search at 4:00 p.m. and seized 99.75 kilograms of marijuana (about 220 pounds), two handguns, a digital scale, and several cell phones. During this time, Valenzuela-Espinoza was detained at the residence. He was brought to an ICE station around 5:00 p.m. and questioned at 7:32 p.m. after being advised of his *Miranda* rights.

Valenzuela-Espinoza was given a *Miranda* waiver form written in Spanish, and Agent Van Holsbeke, who speaks Spanish, read the form to him as well. He refused to sign the form. Agent Van Holsbeke testified that Valenzuela-Espinoza explained that he had been told not to say anything and that he was concerned about his family's safety. At some point, Valenzuela-Espinoza stated that he and the other suspects knew about the marijuana, that another man had helped him unload the marijuana into the house, and that he had agreed to keep the marijuana at the house in exchange for $2500. According to Agent Van Holsbeke, Valenzuela-Espinoza then stated that perhaps he should speak to an attorney, and the interview was terminated, at 7:50 p.m.. Valenzuela-Espinoza was held in custody overnight and presented to a magistrate judge the next day, March 6, 2008, at 2:00 p.m.

## II.

A grand jury indicted Valenzuela-Espinoza on three counts: (1) conspiracy to possess with intent to distribute marijuana; (2) possession with intent to distribute marijuana; and (3) possession of a firearm by an illegal alien. Valenzuela-Espinoza filed a number of pre-trial motions, alleging among other things that his refusal to sign the waiver form was an invocation of his *Miranda* rights; that he had been illegally seized at the residence; that the affidavit in support of the search warrant contained false and misleading information; and that

the delay in presenting him to a magistrate required suppression of his statements under the *McNabb-Mallory* rule.[2]

Magistrate Judge Hector C. Estrada held hearings on the motions to suppress and issued a report and recommendation. The magistrate recommended that Valenzuela-Espinoza's statements between 7:32 p.m. and 7:50 p.m. on March 5, 2008 be suppressed due to a *McNabb-Mallory* violation. The magistrate found that when Valenzuela-Espinoza was arrested for being in the country illegally at 11:15 a.m. on March 5, "any number of available agents" could have taken him ten miles to the nearest magistrate for the daily 2:00 p.m. initial appearance. The magistrate concluded that the agents had instead detained Valenzuela-Espinoza beyond the six-hour "safe harbor" of 18 U.S.C. § 3501(c) "in order to question him regarding drug trafficking" and that this detention was unreasonable. The magistrate also concluded that there had been no illegal seizure but that the evidence obtained in the search should be suppressed because the search warrant affidavit relied on false statements and selective omissions.

Both parties filed objections to the magistrate's report and recommendation. The district court affirmed the magistrate's conclusion that there was no illegal seizure but rejected the conclusion that the search warrant affidavit failed to establish probable cause once all false or misleading statements were excised.

The district court also rejected the magistrate's conclusion that there had been a *McNabb-Mallory* violation. The district

---

[2]Federal Rule of Criminal Procedure 5(a) requires that an arrested person be presented to a magistrate judge "without unnecessary delay." The *McNabb-Mallory* rule provides that "an arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge." *Corley v. United States*, 129 S. Ct. 1558, 1562 (2009). Congress modified the remedy available for violations of Rule 5(a) in 18 U.S.C. § 3501(c) by providing that statements made within six hours after an arrest cannot be excluded solely on the basis of a delay in presentment.

court found that the delay in presenting Valenzuela-Espinoza to a magistrate was reasonable because it was the result of the agents' "other legitimate law enforcement duties" to secure the scene and obtain and execute the search warrant. The district court also took "judicial notice" of the fact that "it is its policy that paperwork for initial appearances before the duty magistrate is required . . . not later than 10:30 a.m. on the morning of the appearance unless exceptional circumstances are present." Therefore, because Valenzuela-Espinoza was not arrested until 11:15 a.m., the district court found he could not have been processed in time for the 2:00 p.m. appearance. In a later ruling, the district court also denied Valenzuela-Espinoza's motion to suppress his statements on the basis that his refusal to sign the *Miranda* waiver form was an invocation of his *Miranda* rights.

A bench trial was held on October 28 and 29, 2009. The judge found Valenzuela-Espinoza guilty of conspiracy to possess marijuana with intent to distribute and possession of marijuana with intent to distribute. The judge found him not guilty of the firearms charge. On February 8, 2010, Valenzuela-Espinoza received concurrent sentences of thirty-six months on each count and a three-year term of supervised release. His notice of appeal was timely filed on February 16, 2010. He has completed his prison sentence and has been deported to Mexico, but he remains subject to the terms of his supervised release. We have jurisdiction pursuant to 28 U.S.C. § 1291.

On appeal, Valenzuela-Espinoza renews three arguments made in his suppression motions: (1) that the attempted "knock and talk" was an illegal seizure; (2) that his statements made at the ICE office should be suppressed under the *McNabb-Mallory* rule; and (3) that his refusal to sign the *Miranda* waiver form was an invocation of his *Miranda* rights. Additionally, he argues that the district court improperly rejected the magistrate's credibility findings regarding the search warrant affidavit without conducting a de novo evi-

dentiary hearing and that there was insufficient evidence to convict him on the conspiracy charge. Because the *McNabb-Mallory* violation requires reversal of Valenzuela-Espinoza's conviction, we need not address his other arguments on appeal.

## III.

**[1]** Federal Rule of Criminal Procedure 5(a) provides that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge. . . ." The rule established in *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957), provides that "an arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge." *Corley v. United States*, 129 S. Ct. 1558, 1562 (2009). In response to the *McNabb-Mallory* rule, Congress enacted 18 U.S.C. § 3501(c), which provides a six-hour "safe harbor" period during which a confession will not be deemed inadmissible solely because of delay in presentment to a magistrate. *United States v. Liera*, 585 F.3d 1237, 1242 (9th Cir. 2009).

The Supreme Court's decision in *Corley* reaffirmed the validity of the *McNabb-Mallory* rule. 129 S. Ct. at 1563. Noting that the *McNabb-Mallory* rule "has always mattered in very practical ways and still does," the Court explained:

> Today presentment is the point at which the judge is required to take several key steps to foreclose Government overreaching: informing the defendant of the charges against him, his right to remain silent, his right to counsel, the availability of bail, and any right to a preliminary hearing; giving the defendant a chance to consult with counsel; and deciding between detention or release.

*Id.* at 1570. These important consequences of prompt presentment "count[ed] heavily" against the government's position

that § 3501(c) nullified *McNabb-Mallory* entirely, for "if there is no *McNabb-Mallory* there is no apparent remedy for delay in presentment." *Id.* The Court concluded that § 3501(c) "modified *McNabb-Mallory* without supplanting it." *Id.*

**[2]** The Court went on to clarify the procedure for applying *McNabb-Mallory* in light of § 3501(c):

> [A] district court . . . must find whether the defendant confessed within six hours of arrest (unless a longer delay was reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate). If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was made voluntarily and the weight to be given it is left to the jury. If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed.

*Id.* at 1571 (internal quotation marks and alterations omitted); *see also United States v. Garcia-Hernandez*, 569 F.3d 1100, 1105 (9th Cir. 2009) (describing *Corley*'s two-part test). "We review a district court's finding that a pre-arraignment delay was reasonable for clear error." *Liera*, 585 F.3d at 1243.

## A.

**[3]** Here, there is no question that Valenzuela-Espinoza's incriminating statements were made before presentment and beyond six hours. Valenzuela-Espinoza was arrested at 11:15 a.m., and his statements at the ICE station were made between 7:32 and 7:50 p.m., more than eight hours after his arrest. He was not arraigned until 2:00 p.m. the following day. Following the two-part inquiry outlined in *Corley*, we first consider whether "a longer delay was reasonable considering the

means of transportation and the distance to be traveled to the nearest available magistrate." *Corley*, 129 S. Ct. at 1571.

**[4]** The nearest magistrate conducted a daily initial appearance calendar at 2:00 p.m. and was located only ten miles from the house where Valenzuela-Espinoza was arrested. Nine law enforcement officers were involved in the "knock and talk" that led to the arrest. Common sense dictates that under these circumstances, there was no reason for delay due to "the means of transportation and the distance to be traveled" — indeed, after an evidentiary hearing, the magistrate made a finding of fact that "any number of available agents" could have taken Valenzuela-Espinoza to the 2:00 p.m. arraignment calendar.

When reviewing the magistrate's recommendation, however, the district court took judicial notice that "it is [the court's] policy that paperwork for initial appearances before the duty magistrate is required . . . not later than 10:30 a.m. on the morning of the appearance unless exceptional circumstances are present." The district court did not refer to a court rule or written policy and did not explain what exceptional circumstances might alter its policy or why those circumstances were not present in this case. The district court concluded that because Valenzuela-Espinoza was not arrested until 11:15 a.m., its 10:30 a.m. paperwork policy prevented him from being arraigned at the 2:00 p.m. calendar; in other words, that the "nearest available magistrate," *Corley*, 129 S. Ct. at 1571, was at the arraignment calendar on the following day, almost twenty-seven hours after the arrest.

**[5]** Valenzuela-Espinoza argues that the paperwork policy was not a proper subject for judicial notice. Federal Rule of Evidence 201 provides that a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be ques-

tioned." As Valenzuela-Espinoza points out, neither the district court nor the government cited any official court rules or records that could make the paperwork requirement "capable of accurate and ready determination." *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of official information posted on a governmental website, the accuracy of which was undisputed). Furthermore, the fact that the magistrate who initially considered Valenzuela-Espinoza's motion to suppress did not discuss the 10:30 a.m. paperwork-requirement deadline undermines the notion that it was either a controlling, universally-observed policy or one "generally known within the territorial jurisdiction of the trial court." *See* Fed. R. Evid. 201.

After oral argument, the government, in a 28(j) letter,[3] provided the court with a copy of a February 1998 internal memorandum from the Tucson magistrate judges to the U.S. Attorney's office, describing the 10:30 a.m. requirement and requesting that the U.S. Attorney's office communicate the requirement to all law enforcement agencies.[4] The government also provided a series of internal emails reiterating the policy in 2010, as well as a 2002 case from this court recognizing the policy's existence. *See United States v. Gamez*, 301 F.3d 1138 (9th Cir. 2002).

**[6]** The district court did not mention any of these sources when it took judicial notice of the paperwork requirement. But even assuming without deciding that the policy was a proper subject for judicial notice, we conclude that the 10:30 a.m. paperwork requirement, standing alone, does not estab-

---

[3]Fed. R. App. P. 28(j) provides that a party may advise the circuit clerk by letter of pertinent and significant authorities that come to the party's attention after the party's brief has been filed or after oral argument but before decision.

[4]Ironically, the memo apparently was circulated because the agencies were *not* uniformly observing the 10:30 a.m. deadline.

lish that a delay beyond six hours was "reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate." *Corley*, 129 S. Ct. at 1571.

Concluding otherwise would ignore *Corley*'s instruction that delays must be reasonable. A hypothetical illustrates this point. Imagine a defendant who is arrested on a federal warrant right outside the Tucson district court at 10:31 a.m. The agents immediately bring the defendant before the magistrate for arraignment. It has been a particularly quiet week for law enforcement in Tucson, and no other arraignments are scheduled for that day. Because the court was not notified by 10:30 a.m., however, the agents are turned away, and the defendant is detained for over twenty-seven hours before finally being presented to a magistrate. This delay is not due to distance, means of transportation, or the unavailability of the nearest magistrate — instead, the delay is caused solely by the pre-notification policy. Such a delay is, without question, unreasonable and unnecessary.

Moreover, if the availability of a magistrate is determined solely by an arbitrary notification deadline, nothing prevents a district court from moving that deadline so early in the day that it renders the prompt presentment requirement meaningless. When Congress enacted § 3501(c), it determined that a safe harbor period of six hours struck the appropriate balance between convenience for law enforcement and concern about extended presentment delays. *See id.* at 1569 (discussing the legislative history leading to the six-hour safe harbor period). If a district court requires all paperwork requirements to be satisfied early in the morning, many defendants will face routine presentment delays of over twenty-four hours. Allowing such a policy to dictate whether a delay was "reasonable" would strip Criminal Rule 5(a)'s presentment requirement — as well as *McNabb-Mallory*'s remedy for delays in presentment — of any significance. An internal policy agreed upon by prosecutors and magistrate judges cannot trump the

requirements of a federal statute and the Federal Rules of Criminal Procedure. Instead, whether a delay was reasonable due to distance, the means of transportation, or the availability of the nearest magistrate must be determined by the facts of the particular case. *See, e.g., United States v. Redlightning*, 624 F.3d 1090, 1107-08 (9th Cir. 2010) (discussing whether Redlightning could have been presented to a magistrate at the start of the arraignment calendar or before the arraignment calendar ended); *Liera*, 585 F.3d at 1240 (discussing the time of the daily calendar call and location of the courthouse fifteen miles from where Liera was arrested); *see also United States v. Perez*, 733 F.2d 1026, 1035 (2d Cir. 1984) (examining the latest time the magistrate was available).

Our previous decision in *Gamez* does not compel a different result. In *Gamez*, a suspect was arrested at 7:30 a.m. at the Nogales Border Patrol station over sixty miles from Tucson. 301 F.3d at 1143. Because he spoke only Spanish, the agents could not question Gamez or determine what offense he would be charged with until a Spanish-speaking agent arrived later that morning. His arraignment was therefore delayed until the following day. *Id.* Although the opinion mentioned the Tucson court's 10:30 a.m. notification policy, its holding was based on the need to wait for a Spanish-speaking agent, and it did not address whether the notification policy alone was a reasonable cause for delay. Our subsequent cases citing to *Gamez* in the *McNabb-Mallory* context describe it in this manner; that is, as a delay in presentment of a defendant due to the unavailability of Spanish-speaking federal agents. In *Garcia-Hernandez*, we described *Gamez* as "holding that a day-and-a-half delay was reasonable due to the unavailability of Spanish-speaking federal agents." 569 F.3d at 1106. Similarly, in *Liera* we described *Gamez* as "holding that a thirty-one hour pre-arraignment delay was necessary because the defendant spoke only Spanish, and the first available Spanish-speaking agent did not arrive until [several] hours after defendant's arrest." 585 F.3d at 1243 (internal quotation marks omitted). The court in *Gamez* did not specifically consider the

reasonableness of the 10:30 a.m. paperwork policy on its own, and our subsequent cases have not interpreted *Gamez* as making any such determination.

**[7]** Here, Valenzuela-Espinoza was arrested just ten miles from the courthouse almost three hours before the scheduled arraignment calendar. The delay here was not reasonable "given the means of transportation and the distance to be traveled to the nearest available magistrate." *Corley*, 129 S. Ct. at 1571. The 10:30 a.m. notification policy cannot by itself create a reasonable delay. To hold otherwise would stand the *McNabb-Mallory* rule on its head. It is not the longstanding principle embodied in *McNabb-Mallory* that must give way to local paperwork needs, but the local paperwork policy that must be tailored to the requirements of *McNabb-Mallory*, its implementing statute, and rule.

## B.

We thus turn to the second part of our inquiry and consider whether the delay "was unreasonable or unnecessary under the *McNabb-Mallory* cases." *Id.* Our cases have identified three categories of reasonable delay apart from transportation, distance, and the availability of a magistrate. First, delay for humanitarian reasons is reasonable. *See, e.g.*, *Redlightning*, 624 F.3d at 1109 (allowing defendant to retrieve his medication); *United States v. Manuel*, 706 F.2d 908, 914 (9th Cir. 1983) (allowing an extremely intoxicated man to sleep and have a meal). Second, "delays due to the unavailability of government personnel . . . necessary to completing the arraignment process" are also reasonable. *Liera*, 585 F.3d at 1242 (quoting *Garcia-Hernandez*, 569 F.3d at 1106).

Finally, delays necessary to determine "whether [a suspect] should be criminally charged" are also reasonable. *Garcia-Hernandez*, 569 F.3d at 1106; *see also Gamez*, 301 F.3d at 1143 (explaining that delay was reasonable where it "was impossible to determine with what kind of offense Gamez

would be charged" prior to questioning by Spanish-speaking agents).

The delay in presenting Valenzuela-Espinoza does not fall into any of these categories and was not reasonable. First, there is no suggestion that the delay was for humanitarian reasons.

**[8]** Second, there were plenty of law enforcement personnel available to complete Valenzuela-Espinoza's arraignment. The district court found that the agents involved with Valenzuela-Espinoza's arrest were unavailable to take him to the arraignment because they were conducting "other legitimate law enforcement duties" such as securing the scene and obtaining and executing the search warrant. This finding was clearly erroneous. Agent Van Holsbeke testified that his time had been occupied preparing the search warrant affidavit and obtaining the warrant. One other ICE Agent testified that during that time, he and the other agents "basically sat on the house until the warrant" to "make sure no one else would come or go." There is no basis in this testimony for the conclusion that all nine law enforcement officers involved in the operation were too busy to take Valenzuela-Espinoza to the magistrate. Rather, as the magistrate who conducted the evidentiary hearing observed, "any number of available agents" could have transported Valenzuela-Espinoza. We conclude that in this case, the fact that one officer out of nine was fulfilling his responsibility to obtain a search warrant did not make the delay reasonable under *McNabb-Mallory*.

Third, the record demonstrates that it was not necessary to conduct any further investigation to determine whether Valenzuela-Espinoza could be criminally charged. In its petition for rehearing, the government asserts that Valenzuela-Espinoza was arrested only for being in the United States illegally, and that until the search warrant was executed it could not be determined if he would be charged with a criminal drug offense or merely turned over to immigration authorities.

As a preliminary matter, the government did not raise this argument in its initial briefing before this court, and its "failure to brief the issue results in waiver." *United States v. Ewing*, 638 F.3d 1226, 1230 (9th Cir. 2011). But in any event, this argument is not supported by the record. The government consistently asserted in its pleadings before the district court that after Valenzuela-Espinoza exited the carport in "a cloud of marijuana smoke" and told the officers that there was more than ten pounds of marijuana inside the house, the government "had probable cause to detain the defendant for a criminal offense, possession of marijuana." The government maintained that when Agent Van Holsbeke smelled and saw the marijuana smoke, he not only had probable cause to believe that there was marijuana inside the house "but was witnessing a crime being committed in his presence." The district court accepted these arguments, expressly finding that "[a]lthough Defendant Valenzuela-Espinoza was initially arrested because of his presence in the United States illegally, probable cause also existed regarding his involvement in criminal activity." There is simply nothing in the record to support the claim that the officers needed to execute the search warrant to determine whether they could charge Valenzuela-Espinoza with possession of marijuana.

## IV.

Rule 5(a) and *McNabb-Mallory* are important procedural safeguards that protect against "the evil implications of secret interrogation" and "insure that a defendant is brought 'before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined.' " *Liera*, 585 F.3d at 1243 (quoting *McNabb*, 318 U.S. at 344, and *Mallory*, 354 U.S. at 454). As the Supreme Court reminded us just two years ago, "Justice Frankfurter's point in *McNabb* is as fresh as ever: 'The history of liberty has largely been the history of observance of procedural safeguards.' " *Corley*, 129 S. Ct. at 1570 (quoting *McNabb*, 318 U.S. at 347).

**[9]** We hold that the district court erred by not suppressing under the *McNabb-Mallory* rule the statements made by Valenzuela-Espinoza at the ICE station. The agents here unnecessarily delayed presenting Valenzuela-Espinoza to a magistrate in violation of Rule 5(a) and *McNabb-Mallory*. His statements at the ICE office amounted to a confession, and the government does not argue that the admission of those statements was harmless error.[5] Valenzuela-Espinoza's convictions are vacated and we remand for further proceedings.

VACATED and REMANDED.

---

[5]Even had the government argued that admission of the confession was harmless, we would reject such an argument. "A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him . . . ." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (internal quotation marks and citation omitted). Admission of a full confession, " 'in which the defendant discloses the motive for and means of the crime[,]' . . . will seldom be harmless." *United States v. Williams*, 435 F.3d 1148, 1162 (9th Cir. 2006) (quoting *Fulminante*, 499 U.S. at 296).