**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

LUIS OSVALDO TORRES PIMENTAL,
AKA Luis Torres,
*Defendant-Appellant*.

No. 12-50038

D.C. No.
3:11-cr-00794-
MMA-2

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted May 8, 2013
Pasadena, California

Filed June 24, 2014

Before: Harry Pregerson and Raymond C. Fisher, Circuit
Judges, and Wiley Y. Daniel, Senior District Judge.[*]

Opinion by Judge Pregerson

---

[*] The Honorable Wiley Y. Daniel, Senior District Judge for the U.S. District Court for Colorado, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the denial of a motion to suppress a defendant's incriminating statements, vacated his conviction for importation of marijuana, and remanded the case for further proceedings.

The panel held that under the *McNabb-Mallory* rule, the statements the defendant made to a federal agent forty-eight hours after his arrest, but before he was presented to a magistrate judge, must be suppressed because the four-day delay in presenting him to a magistrate was unreasonable and unnecessary.

### COUNSEL

Devin Burstein (argued) and Zandra L. Lopez, Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Steve Miller and Mark R. Rehe (argued), Assistant United States Attorneys, San Diego, California, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

PREGERSON, Circuit Judge:

Luis Osvaldo Torres Pimental appeals his conviction following a conditional guilty plea to one count of importation of over fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2. Torres Pimental entered his guilty plea on the condition that he retain his right to appeal the district court's denial of his motion to suppress incriminating statements he made to a federal agent forty-eight hours after his arrest, but before he was presented to a magistrate judge. Torres Pimental now seeks reversal of the denial of his motion to suppress.

Because the delay in presenting Torres Pimental to a magistrate was unreasonable and unnecessary, Torres Pimental's statements must be suppressed under Federal Rule of Criminal Procedure 5(a), *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957). *See United States v. Valenzuela-Espinoza*, 697 F.3d 742, 745 (9th Cir. 2012). We REVERSE the district court's denial of Torres Pimental's suppression motion, VACATE the conviction, and REMAND for further proceedings. Because we vacate his conviction based on the *McNabb-Mallory* rule, we do not address Torres Pimental's challenge to his conviction based on *Miranda v. Arizona*, 384 U.S. 436 (1966).

**I. BACKGROUND**

On Friday, January 14, 2011, Torres Pimental, a United States citizen with no prior criminal record, entered the United States from Mexico through the San Ysidro Port of

Entry.  He was the sole passenger in a white Dodge Durango driven by Blanca Canales.

At the Port of Entry's "pre-primary inspection area," a narcotics inspection dog alerted on the vehicle.  At approximately 9:25 a.m., United States Customs and Border Protection ("CBP") Officer Gruda was notified of the alert. Officer Gruda approached the vehicle and asked Canales where she was going.  Canales replied that she was on her way to Paramount, California.  She said the Dodge Durango was her uncle's and that she had driven to Mexico to drop off her grandmother.

Officer Gruda conducted a cursory inspection of the vehicle and noticed that the rear passenger seat felt hard.  He removed the car seat from the top of the rear passenger seat and noticed a large lump in the rear seat.  He folded up the rear passenger seat and discovered cellophane packages hidden underneath.  At 9:30 a.m., CBP officers arrested Canales and Torres Pimental and escorted them to the security office in handcuffs.

Officer Gruda drove the vehicle to the "secondary inspection area" for further inspection.  At 10:00 a.m., CBP Officer Alves inspected the vehicle.  Officer Alves discovered and seized 37 packages containing approximately 71.25 kilograms (156.75 pounds) of marijuana hidden in the rear doors, quarter panels, passenger seat, middle seat, and third row seat of the vehicle.  Three of the packages were discovered in the front passenger seat, where Torres Pimental had been sitting.  The packages were in vacuum-sealed bags wrapped in dryer sheets and cellophane.

Department of Homeland Security Special Agent Shelly Aradanas, who worked at the San Ysidro Port of Entry, was notified about the drugs found in Canales's vehicle. At 11:52 a.m., Torres Pimental was brought to an interview room where Agent Aradanas read him his *Miranda* rights. Agent Aradanas asked Torres Pimental if he understood his rights and asked him to initial each of the rights on a pre-printed Advisement of Rights form. Torres Pimental wrote his initials next to each of the rights and signed the form, agreeing to answer questions without an attorney present. Agent Aradanas then asked Torres Pimental where he was driving. Torres Pimental shook his head, indicating "no." She asked him what he was doing in Mexico. Torres Pimental again shook his head, indicating "no." At 11:54 a.m., two minutes after the interview began, Torres Pimental stated: "I think it would be better if I wait for an attorney." Agent Aradanas stopped questioning Torres Pimental and terminated the interview at that time.

At about 12:42 p.m., Agent Aradanas began to interview Canales, and advised her of her *Miranda* rights. Canales acknowledged her rights and agreed to answer questions without an attorney present. Canales initially denied knowledge of the marijuana found in the vehicle. After Agent Aradanas said she did not believe Canales's story, Canales stated that she knew the car contained marijuana and that she and Torres Pimental together had planned the marijuana smuggling venture. Canales stated that she did not know where they were delivering the marijuana, but she thought they were going to the Los Angeles area. She stated that she knew she would be compensated with money, but she had not negotiated a payment amount. Canales also said that two other men went down to Tijuana with Canales and Torres Pimental. Those men, she said, drove back in a separate car,

which had also been pulled into the secondary inspection area at the San Ysidro Port of Entry at the same time she and Torres Pimental had been pulled into the secondary lot.

At 5:00 p.m., Agent Aradanas signed a complaint against Torres Pimental and Canales, stating that Torres Pimental and Canales "knowingly and intentionally import[ed]" marijuana into the United States. Agent Aradanas faxed the complaint and a one-and-a-half page affidavit to United States Magistrate Judge Peter C. Lewis in San Diego. Judge Lewis signed the complaint at 8:14 p.m.

Earlier that day, there was a magistrate court calendar for Rule 5 presentment at the United States District Court for the Southern District of California in San Diego, located just seventeen miles, or about twenty-two minutes, from the San Ysidro Port of Entry where Torres Pimental was being held.[1] The calendar began at 2:00 p.m. — four-and-a-half hours after Torres Pimental was arrested and over two hours after his interrogation at the Port of Entry ended. Agent Aradanas knew that if Torres Pimental was not brought to the court for presentment that day, he would not go to court or be appointed an attorney until the following Tuesday because of a three-day holiday weekend. Nevertheless, neither Agent Aradanas, nor any other agent, drove Torres Pimental the short distance to the San Diego courthouse for his initial appearance that day.

---

[1] Under Federal Rules of Criminal Procedure 5(a)(1)(A), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer[,] unless a statute provides otherwise."

Instead, after Torres Pimental's interrogation ended at 11:54 a.m., Agent Aradanas kept him in custody in a San Ysidro Port of Entry holding cell because no beds were available at the Metropolitan Corrections Center ("MCC") in downtown San Diego. Torres Pimental remained in custody at the Port of Entry from Friday morning until the MCC had space available on Sunday morning.

During his detention at the Port of Entry that Friday and Saturday night, Torres Pimental slept on the floor of the holding cell with nine to twelve other arrestees. He was given a blanket for only part of the time he was detained there, even though the air conditioning was turned on and the holding cell was cold.

Nearly forty-eight hours after his arrest, Torres Pimental was driven to the MCC on Sunday, January 16, 2011, by DHS Agent Sabas Torres. Agent Aradanas transported Canales to the MCC in a separate vehicle at the same time. The drive from the Port of Entry to the MCC took fifteen to twenty minutes.

During the drive, Torres Pimental asked Agent Sabas Torres how long his sentence would be. Agent Sabas Torres told Torres Pimental that he did not know the facts of Torres Pimental's case and did not know how long Torres Pimental's sentence would be. The agent told Torres Pimental about the factors that impact a sentence generally, including the point system, criminal history, declarations given at the time of arrest, case agent reports, and government recommendations.

Agent Sabas Torres informed Torres Pimental that "defendants are given their time to explain their side of the story during questioning," but that "sometimes people don't

take that seriously." He said it was "difficult for an agent to
. . . talk to the defendant after he gets appointed counsel . . .
because they now have an attorney. It's difficult to set up a
meeting." He told Torres Pimental that "if you don't speak
to the agents right away then you don't get another
opportunity to speak to them for a while." Agent Sabas
Torres explained that defendants "get less time" if they
"make a statement." Agent Sabas Torres told Torres
Pimental that "it happens a lot that people don't cooperate
and they get more time."

Because of Agent Sabas Torres's statements, Pimental
"felt [he] had to make a statement admitting guilt or else [he]
was going to have to stay in jail for a long time." When they
were less than a minute from the MCC, Torres Pimental
asked if he could speak with Agent Aradanas. Agent Sabas
Torres informed Torres Pimental that "everything you say has
to be voluntary, okay. We cannot ask you questions." Torres
Pimental responded, "Oh, yeah, yeah, yeah, it's volunt[ary]."

When both vehicles arrived at the MCC, Agent Sabas
Torres told Agent Aradanas that Torres Pimental wanted to
speak to her. Agent Aradanas approached Torres Pimental
and asked, "What's up?" Torres Pimental told Agent
Aradanas to ask him what she wanted to know. Without
reminding him of his *Miranda* rights, Agent Aradanas asked
Torres Pimental how much he was going to get paid for the
marijuana, where he was taking the drugs, who hired him,
and if he knew what was in the car. Torres Pimental
confessed that he was going to be paid $1,500; he was going
to Lynwood, California; a person named Ruben hired him;
and he knew marijuana was in the car. Agent Aradanas
advised Torres Pimental to tell his attorney that he asked to
talk to her, then she took him inside the MCC for processing.

On Tuesday, January 18, 2011, four days after he was arrested, Torres Pimental was brought to a magistrate judge for the first time.  Counsel was appointed and bail was set. He was released on bond several days later.

Torres Pimental was indicted by a grand jury on one count of conspiracy to import marijuana and one count of importation of marijuana.  He moved the district court to suppress the statements he made to Agent Aradanas on Sunday, January 16, because:  (1) the delay in presenting Torres Pimental to a magistrate was unreasonable, and his statements made nearly forty-eight hours after his arrest must be suppressed under the rule announced in *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957);[2] and (2) the statements were taken in violation of *Miranda* and were not made voluntarily.

The district court denied the motion to suppress after conducting an evidentiary hearing.

After the district court denied the motion to suppress, Torres Pimental pleaded guilty — pursuant to a conditional plea agreement — to one count of importation of marijuana in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2. He was sentenced to twelve months and one day in custody and three years' supervised release.  He timely appeals the denial of his motion to suppress.

---

[2] Under the *McNabb-Mallory* rule, a confession is inadmissible if it is "given after an unreasonable delay in bringing [an arrested person] before a judge."  *Corley v. United States*, 556 U.S. 303, 306 (2009).

## II. DISCUSSION

Torres Pimental argues that his incriminating statements must be suppressed because of an unnecessary or unreasonable delay under Federal Rule of Criminal Procedure 5(a) and the *McNabb-Mallory* rule. We agree.

We review de novo a denial of a motion to suppress, but the underlying factual findings are reviewed for clear error. *United States v. Amano*, 229 F.3d 801, 803 (9th Cir. 2000). We review for clear error a district court's finding that a delay in bringing a defendant before a magistrate judge was reasonable. *United States v. Liera*, 585 F.3d 1237, 1242 (9th Cir. 2009).

### A.  The *McNabb-Mallory* Rule

Under Rule 5(a) of the Federal Rules of Criminal Procedure, "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ."  The *McNabb-Mallory* rule "generally renders inadmissible confessions made during periods of detention that violate the prompt presentment requirement of Rule 5(a)." *Corley v. United States*, 556 U.S. 303, 309 (2009) (quoting *United States v. Alvarez-Sanchez*, 511 U.S. 350, 354 (1994)) (alterations omitted).  Under the *McNabb-Mallory* rule, an arrested person must be brought "before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined." *Mallory*, 354 U.S. at 454. Although the arrestee may be "'booked' by the police[,] he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and

ultimately his guilt." *Id*. The rule thus requires an arrested person be brought before a magistrate judge without unreasonable delay.

Congress enacted 18 U.S.C. § 3501(c) in response to the *McNabb-Mallory* rule. *See Valenzuela-Espinoza*, 697 F.3d 742, 748 (9th Cir. 2012). Section 3501(c) "provides a six-hour 'safe harbor' period during which a confession will not be deemed inadmissible solely because of a delay in presentment to a magistrate." *Id.* (citing *Liera*, 585 F.3d at 1242). The six-hour limitation under § 3501(c) does not apply, however, where "the delay in bringing [the defendant] before [a] magistrate judge . . . beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge." 18 U.S.C. § 3501(c).

Following the enactment of § 3501, the Supreme Court "reaffirmed the applicability of the *McNabb-Mallory* Rule" in *Corley v. United States*, 556 U.S. 303 (2009). *Liera*, 585 F.3d at 1242. The Court held that § 3501(c) "modified *McNabb-Mallory* without supplanting it." *Corley*, 556 U.S. at 322. The Court established a two-part test for applying the *McNabb-Mallory* rule in light of the § 3501(c) six-hour safe harbor period. First, "a district court . . . must find whether the defendant confessed within six hours of arrest (unless a longer delay was reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate judge)." *Id.* (internal quotation marks and alterations omitted). "If the confession came within that period, it is admissible . . . so long as it was made voluntarily." *Id.* (internal quotation marks omitted). If, however, "the confession occurred before presentment and

beyond six hours, . . . the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed." *Id*. This is true even if the confession was made voluntarily. *Id.* at 308.

### B. Unreasonable or Unnecessary Delay

We must first "find whether [Torres Pimental] confessed within six hours of arrest (unless a longer delay was reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate judge)." *Corley*, 556 U.S. at 322 (citing 18 U.S.C. § 3501(c)). It is undisputed that Torres Pimental's incriminating statements, made on a Sunday, were made more than six hours after his 9:30 a.m. Friday morning arrest and before his Tuesday morning initial appearance. Moreover, the delay was not a result of the distance to be traveled to the nearest available magistrate holding a presentment calendar that Friday. The nearest available magistrate was located only seventeen miles — or about twenty-two minutes — away. *See Liera*, 585 F.3d at 1242 (holding that the delay was not a result of the distance to be traveled to the nearest available magistrate when the nearest available magistrate was located fifteen miles away).

Because the § 3501(c) safe harbor does not apply, our analysis turns on whether the delay was "unreasonable or unnecessary under the *McNabb-Mallory* cases." *Corley*, 556 U.S. at 322. If the delay was unreasonable or unnecessary under the *McNabb-Mallory* cases, "the confession is to be suppressed." *Id*. We have "identified three categories of reasonable delays apart from transportation, distance, and the availability of a magistrate":

(1) delays for "humanitarian reasons;" (2) "delays due to the unavailability of government personnel [and judges] necessary to completing the arraignment process;" and (3) "delays necessary to determine whether a suspect should be criminally charged." *Valenzuela-Espinoza*, 697 F.3d at 752 (internal quotation marks and alteration omitted).

The delay in presenting Torres Pimental does not fall within any of the three categories, and therefore was unreasonable.

First, the government does not contend that the delay was reasonable for humanitarian reasons.

Second, the delay was not "due to the unavailability of government personnel and judges necessary to completing the arraignment process." *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009). The district court, citing *Garcia-Hernandez* and similar cases, held that the delay here was reasonable because the complaint was presented to the magistrate judge at 5:00 p.m. on a Friday before a long holiday weekend. Between 5:00 p.m. on Friday until the Tuesday after Torres Pimental was arrested, the magistrate judge was presumably unavailable; thus, the district court determined, that Tuesday was the earliest possible time Torres Pimental could have been presented to a magistrate. We agree that, in certain circumstances, if a defendant is arrested after the magistrate court is closed on a Friday night before a holiday weekend, and a judge is not available over the weekend for Rule 5 presentment, then a weekend delay might be reasonable. *See United States v. Van Poyck*, 77 F.3d 285, 289–90 (9th Cir. 1996) (holding that a weekend delay due to the unavailability of a magistrate judge was not unreasonable when the defendant was arrested on a

Friday afternoon and no magistrate judge was available over the weekend).

That the complaint was not faxed to the magistrate judge until 5:00 p.m. was not "due to the unavailability of government personnel and judges necessary to completing the arraignment process," *Garcia-Hernandez*, 569 F.3d at 1106, as found reasonable in *Van Poyck*. Rather, here a magistrate judge was available starting at 2:00 p.m. on Friday at the federal courthouse in San Diego only seventeen miles away. And there is no suggestion that there were not enough federal agents to transport Torres Pimental that short distance to the court. *See Valenzuela-Espinoza*, 697 F.3d at 752 (concluding that, just because "one officer out of nine was fulfilling his responsibility to obtain a search warrant did not make the delay reasonable under *McNabb-Mallory*"). The reason Torres Pimental was not transported to the magistrate was not due to the unavailability of any necessary personnel or available judge; rather, Torres Pimental could have been taken to the nearby available magistrate by any number of law enforcement officers at the Port of Entry. Thus, the delay does not fall under the second category.

Third, the delay was not reasonable to determine "whether [Torres Pimental] could be criminally charged." *Id*. The agents had enough information to charge Torres Pimental at 10:00 a.m. on Friday, when 37 packages containing over 150 pounds of marijuana were found in the Dodge Durango (including 3 packages found in the passenger seat where Torres Pimental had been sitting). The government urges us to find the delay reasonable because of the need to interview Torres Pimental and Canales and the need to prepare a complaint before Torres Pimental could be taken to a magistrate for his initial hearing. We disagree.

The government argues that it would have been "unfeasible" for Torres Pimental to be taken to the court seventeen miles away at any time after his arrest at 9:30 a.m. on Friday, because "the case did not begin and end with him." Not only did Agent Aradanas have to interview Torres Pimental before presenting him to a magistrate judge, the government contends, but, she also had to interview Canales before presenting Torres Pimental to a magistrate judge.

Agent Aradanas's desire to fully investigate the crime by interrogating Torres Pimental and Canales was not a valid reason to delay presenting Torres Pimental to a magistrate judge. There is no evidence in the record that such interrogation was necessary to determine whether Torres Pimental should be criminally charged (or any suggestion that he was not going to be charged). *See Mallory*, 354 U.S. at 454 (an arrested person is "not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt"); *Corley*, 556 U.S. at 308 (reaffirming that "delay for the purpose of interrogation is the epitome of 'unnecessary delay'" (quoting *Mallory*, 354 U.S. at 455–56)); *United States v. Wilson*, 838 F.2d 1081, 1085 (9th Cir. 1988) (describing "[t]he desire of the officers to complete the interrogation" as "the most unreasonable excuse possible" for a delay in presentment); ABA Criminal Justice Standards: Pretrial Release 10-4.1(b) (3d ed. 2007), *available at* http://www.americanbar.org/publications/criminal_justice_ section_archive/crimjust_standards_pretrialrelease_blk.htm l#10-4.1 ("[A] defendant's first appearance should not ordinarily be delayed in order to conduct in-custody interrogation or other in-custody investigation.").

In *Valenzuela-Espinoza*, we specifically rejected the idea that a delay is reasonable to fully investigate a crime when it is unnecessary to conduct further investigation to determine whether a suspect should be charged. *See Valenzuela-Espinoza*, 697 F.3d at 752–53. In that case, federal agents had enough information to charge Valenzuela-Espinoza with possession of marijuana at 11:15 a.m. when he "exited a carport in a 'cloud of marijuana smoke' and told officers that there was ten pounds of marijuana inside the house." *Id*. Rather than presenting Valenzuela-Espinoza to a magistrate judge, however, the officers detained him to interrogate him and conduct a search of the property. *Id.* at 746–47, 752–53. A search warrant was issued at 3:25 p.m., and a large amount of marijuana was discovered. *Id.* at 746. Valenzuela-Espinoza, who had been detained since his arrest at 11:15 a.m., was taken to an Immigration and Custom's Enforcement station for questioning later that evening. *Id*. He was held in custody overnight and presented to the magistrate judge the next day. *Id.* at 747. We held that the delay was unreasonable because "it was not necessary to conduct any further investigation to determine whether Valenzuela-Espinoza could be criminally charged." *Id.* at 752. There was "simply nothing in the record to support the claim that the officers needed to execute the search warrant to determine whether they could charge Valenzuela-Espinoza with possession of marijuana." *Id.* at 753.

Here, as in *Valenzuela-Espinoza*, there is nothing in the record to support the claim that the agents needed more evidence than what they had at 10:00 a.m. on Friday — the fact that over 150 pounds of marijuana were in 37 packages inside the Dodge Durango, including 3 packages in the passenger seat where Torres Pimental was sitting — to determine whether they could charge Torres Pimental with

importing marijuana.  Although we understand why law enforcement sought to strengthen its case against Torres Pimental further, *the delay in presenting Torres Pimental to a magistrate judge* in order to interrogate him and Canales was unreasonable.  *See id.*

Even if it was valid to delay presentment to interrogate Torres Pimental and Blanca Canales, the failure to present Torres Pimental to the magistrate judge on Friday afternoon was still unreasonable because there was ample time between 10:00 a.m. and the conclusion of the magistrate judge's calendar to conduct the interviews, prepare a complaint, and transport Torres Pimental to the courthouse seventeen miles away.  Agent Aradanas knew there was a three-day weekend looming, and knew that if Torres Pimental was not presented to a magistrate judge on Friday, he would be imprisoned without the benefit of a court appointed attorney from Friday morning till Tuesday.  Agent Aradanas was required to promptly take all necessary steps to ensure that Torres Pimental was presented on Friday afternoon, absent a valid reason for delay.

In sum, the four-day delay in presenting Torres Pimental to the magistrate judge was unreasonable under the *McNabb-Mallory* rule.  "The purpose of the *McNabb-Mallory* Rule is not merely to avoid all the evil implications of secret interrogation of persons accused of crime," it was "also designed to insure that a defendant is brought before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined."  *Liera*, 585 F.3d at 1243 (internal quotation marks and citations omitted).  Under the facts presented here, the four-day delay between Torres

Pimental's arrest and his initial appearance before a magistrate judge was unreasonable and unnecessary.

Accordingly, we hold that the district court clearly erred when it determined that the delay in presentment was reasonable and necessary and erred when it declined to suppress the incriminating statements that Torres Pimental made to Agent Aradanas on Sunday morning, about forty-eight hours after his Friday morning arrest, and before he was presented to a magistrate judge on Tuesday.

### III. CONCLUSION

The delay in presenting Torres Pimental to the magistrate judge was unreasonable and unnecessary in violation of Rule 5(a) and the *McNabb-Mallory* rule. We reverse the denial of Torres Pimental's suppression motion, vacate his conviction, and remand for further proceedings.

**VACATED** and **REMANDED.**